**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Miguel Andres Lara-Unzueta,<br><br>Defendant. | No. CR-19-00552-001-PHX-MTL<br><br>**ORDER** |

On May 14, 2019, Defendant Miguel Andres Lara-Unzueta was indicted for illegal reentry in violation of 8 U.S.C. §1326(a) and (b)(1). (Doc 15.) He now moves to dismiss the indictment on grounds that the underlying order of removal violated his due process rights. (Doc. 23 at 1.) The Government filed a response and supplemental exhibits. (Doc. 29.) The Court heard oral argument on October 29, 2019. For the following reasons, Defendant's motion is denied.

**I.     BACKGROUND**

**A. Factual and statutory background**

Defendant is a native and citizen of Mexico. (Doc. 29 at 1.) He was previously a lawful permanent resident alien of the United States. (Doc. 23 at 2; Doc. 29 at 1.) On March 1, 1996, Defendant pleaded guilty to charges of attempted first-degree murder and armed violence in the Circuit Court of Cook County, Illinois. (*Id.*) Because these charges were "aggravated felonies" under the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1101(a)(43), Defendant was eligible for deportation pursuant to

8 U.S.C. § 1227(a)(2)(A)(iii). At the time of his conviction, however, § 212(c) of the INA permitted a person subject to deportation for committing an "aggravated felony" to apply for discretionary relief from removal in certain circumstances. 8 U.S.C. § 1182(c) (1994) (repealed).

Congress enacted two changes to § 212(c) relief while Defendant was serving a six-year sentence for the state court convictions. First, on April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which eliminated § 212(c) discretionary relief for deportable aliens convicted of aggravated felonies. *See* Pub. L. No. 104-132, 110 Stat. 1214, 1277 (1996). Second, on September 30, 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed § 212(c) relief in its entirety. *See* Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-597 (1996).

### B. Removal proceedings

Defendant's removal proceedings arising from his state court convictions commenced in January 1997. (Doc. 29 at 2.) During his removal hearing on August 14, 1997, Defendant admitted removability but requested a hearing for discretionary relief from removal under § 212(c) on grounds that his convictions were not "aggravated felonies" under the INA. The Immigration Judge ("IJ") rejected this argument and concluded that Defendant was not eligible for discretionary § 212(c) relief following the AEDPA's enactment. (Doc. 23 at 3.) The IJ terminated Defendant's permanent resident status and ordered him removed. (*Id.*).

Defendant timely appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision on March 30, 1998. (*Id.*) Defendant was removed from the United States on June 25, 1998. (*Id.*) In the nearly three months between the BIA's ruling and his removal, Defendant did not challenge the BIA's order by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2241, or by appealing to the appropriate Court of Appeals (in this case, the Seventh Circuit). (*Id.*)

Following his removal, the U.S. Supreme Court held in *INS v. St. Cyr*, 533 U.S. 289,

326 (2001), that the AEDPA did not apply to aliens, like Defendant, who pleaded guilty to a criminal charge before the AEDPA and IIRIRA were enacted. Defendant and the Government agree that the IJ and BIA therefore erred in determining that Defendant was precluded from seeking discretionary relief under § 212(c). (Doc. 23 at 3; Doc. 29 at 3.)

### C. Subsequent reentries and legal proceedings

Defendant was again arrested in Illinois on October 3, 2002, this time for armed robbery and attempted armed robbery. (Doc. 29 at 3.) He was subsequently indicted for illegal reentry in violation of 8 U.S.C. § 1326(a) & (b)(2). (*Id.*) As in the present case, Defendant moved to dismiss the indictment, arguing that he was denied due process when the IJ and BIA denied him a hearing for potential relief under § 212(c). (*Id.*)

The District Court for the Northern District of Illinois denied the motion, concluding that Defendant could not meet at least two of the three prongs required by 8 U.S.C. § 1326(d) to collaterally attack his underlying removal. *See United States v. Lara-Unzueta*, 287 F. Supp. 2d 888, 891–92 (N.D. Ill. 2003) (cited in Doc. 29-1 at 7). On April 7, 2004, Defendant was convicted at trial of illegal reentry and sentenced to 65-months' imprisonment. (Doc. 29 at 4.)

Defendant appealed the denial of the motion to dismiss to the Seventh Circuit Court of Appeals. *See United States v. Lara-Unzueta*, No. 04-1954 (7th Cir. May 24, 2005) (cited in Doc. 29-2). On May 24, 2005, the Seventh Circuit affirmed the denial on the same grounds as the District Court. *Id.* at 6. The Seventh Circuit also remanded for a discrete sentencing issue. *Id.*

In connection with the armed robbery charges, Defendant also filed a habeas petition pursuant to 28 U.S.C. § 2241 to challenge his 1998 removal. *See Lara-Unzueta v. Monica*, No. 03 C 6083, 2004 WL 856570 (N.D. Ill. Apr. 20, 2004) (cited in Doc. 29-3). The District Court for the Northern District of Illinois denied his petition on procedural grounds. (*Id.*) Defendant did not appeal. (Doc. 29 at 4.) He was ultimately removed to Mexico for a second time on August 30, 2007. (*Id.*)

In July 2011, Defendant was again indicted for illegal reentry in violation of

8 U.S.C. § 1326(a). *See United States v. Lara-Unzueta*, No. 11 CR 495, 2012 WL 2359350, (N.D. Ill. June 20, 2012), *aff'd*, 735 F.3d 954 (7th Cir. 2013) (cited in Doc. 29-4). He again moved to dismiss the indictment on grounds that his 1998 removal violated his due process rights. The District Court for the Northern District of Illinois denied the motion on June 20, 2012. *See id*. In addition to substantive rulings, the District Court also found that Defendant was collaterally estopped from "presenting the same issue before this court that was already resolved in his prior criminal action." *Id*. at *3. This time, Defendant did not appeal to the Seventh Circuit. (Doc. 29 at 5.) Defendant was removed from the United States for a third time on or about June 28, 2017. (Doc. 15.)

In the instant action, the Government charges that, on or about March 17, 2019, Defendant again reentered the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). (Doc. 1.) On May 14, 2019, he was indicted for illegal reentry. (Doc. 15.) Defendant moves to dismiss the indictment.

## II. LEGAL STANDARD

It is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General. 8 U.S.C. §1326(a).[1] A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 may "bring a collateral attack challenging the validity of his underlying removal order, because that order serves as a predicate element of his conviction." *United States v. Ochoa*, 861 F.3d 1010, 1014 (9th Cir. 2017).

Congress has "strictly limited an alien's ability" to challenge a removal order. *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1014–15 (9th Cir. 2013). Defendant must meet the three-part test established under 8 U.S.C. § 1326(d) to successfully challenge his underlying deportation order:

[A]n alien may not challenge the validity of the deportation order. . . unless

---

[1] 8 U.S.C. § 1326(b)(1), for which Defendant is also charged, imposes penalties for those aliens whose removal was subsequent to a conviction for commission of three or more misdemeanors in certain circumstances, or for a felony.

- 4 -

the alien demonstrates that—

 (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

 (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

 (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

## III. ANALYSIS

### A. Defendant's collateral attack of the 1998 removal order

Defendant's present indictment cites his immediately prior June 28, 2017 removal. (Doc. 15.) However, Defendant argues that his underlying 1998 removal order, which "has been reinstated a number of times and forms the basis for defendant's prior illegal entry convictions," was obtained in violation of his due process rights. (Doc. 23 at 1.) He asserts that it therefore cannot form the basis for the pending illegal reentry charge. (*Id.*) The Ninth Circuit has held that any "valid reinstatement of a[n] invalid removal order cannot transform the prior order into a valid predicate for an illegal reentry conviction." *United States v. Arias-Ordonez*, 597 F.3d 972, 981 (9th Cir. 2010). The Court therefore assesses Defendant's 1998 removal order as the ultimate predicate of the pending illegal reentry charge.

This Court agrees with the (at least) three federal courts to previously order that Defendant cannot successfully challenge his 1998 removal order. He cannot satisfy all three requirements for collaterally challenging his underlying deportation proceedings.

#### 1. Exhaustion of administrative remedies

The Government does not argue that Defendant failed to exhaust his administrative remedies pursuant to 8 U.S.C. § 1326(d)(1). (Doc. 29 at 3.) The Court recognizes that Defendant appealed the IJ's ruling to the BIA, seemingly exhausting his administrative remedies. (Doc. 23 at 3.) That said, in its 2003 ruling, the Northern District for the District

of Illinois suggested without ruling that Defendant had not, in fact, exhausted his administrative remedies because he did not specifically argue to the IJ and BIA that "his case should be considered under the law in effect prior to the AEDPA and IIRIRA." *Lara-Unzueta*, 287 F. Supp. 2d at 891 (cited in Doc. 29-1 at 7). Those underlying records are not presently before the Court, however. Regardless, this Court need not rule on the exhaustion of administrative remedies because Defendant cannot meet the second prong of 8 U.S.C. § 1326(d).

## 2. Deprivation of opportunity for judicial review

The Ninth Circuit has held that a "defendant must show an actual or constructive inability to seek judicial review, related to an alleged error or obstacle in the deportation proceedings, to satisfy 1326(d)(2)." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1133 (9th Cir. 2013). Defendant neither directly appealed the BIA's ruling to the Seventh Circuit, nor filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 29 at 4.) He does not claim that he was unable to do so. Defendant has therefore not demonstrated that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review" as required by 8 U.S.C. § 1326(d)(2).

Defendant heavily relies on *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004), in which the Ninth Circuit held that a defendant was deprived of the "opportunity for meaningful review because the IJ did not inform him of his right to appeal his deportation order."[2] *Id*. at 1050. That case is readily distinguishable. For one, the IJ "did not inform Ubaldo-Figueroa in English or in Spanish that he had the right to appeal the Immigration Judge's decision." *Id*. at 1049. Defendant does not argue that the same was true in his case—and, in fact, he timely appealed to the BIA. (Doc. 29 at 3.) In addition,

---

[2] In briefing and at oral argument, Defendant appears to conflate U.S.C. § 1326(d)(1), which requires that an alien "exhausted any administrative remedies," and (d)(2), which requires that the alien be "deprived…of the opportunity for judicial review." The Government does not argue that Defendant failed to exhaust his administrative remedies under U.S.C. § 1326(d)(1). (Doc. 29 at 5.) The Court generally understands Defendant's references to "exhaustion" to refer to his argument that he was deprived of the opportunity for judicial review.

- 6 -

this case is distinguishable from *Ubaldo-Figueroa* because "the IJ did not inform [Ubaldo-Figueroa] that he was eligible for relief from deportation" under the former § 212(c). *Id.* Here, however, Defendant was clearly aware of the potential for § 212(c) relief, given that the IJ denied his request for it. (Doc. 23 at 3.) The Court agrees with the Government that *Ubaldo-Figueroa* is distinguishable and does not support Defendant's argument that he was denied an opportunity for meaningful judicial review.

Defendant also asserts that he did not appeal the BIA's decision because "appellate courts, for years after AEPDA, denied defendants from seeking Section 212(c) relief even if they had pleaded guilty before AEPDA." (Doc. 23 at 5.) This assumed futility, however, does not demonstrate that Defendant was "improperly deprived" of the opportunity for judicial review. As the District Court for the Northern District of Illinois previously recognized when rejecting the same argument from Defendant, "the law would never change if litigants did not request the responsible tribunals to reconsider earlier rulings." *Lara-Unzueta*, 287 F. Supp. 2d at 892 (internal citation omitted) (cited in Doc. 29-1 at 8).

The Court notes that at oral argument on the motion to dismiss, Defendant's counsel raised two cases in support of his futility argument. Those cases, too, are readily distinguishable. In the first case, *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004), the defendant collaterally attacked his underlying removal order, arguing that the IJ did not inform him of his eligibility for potential § 212(c) relief. The defendant appealed to the BIA two years later. *Id.* at 65. He was shortly thereafter deported, and the BIA dismissed his appeal as moot. *Id.* The defendant was subsequently arrested for illegal reentry and moved to dismiss his indictment. *Id.*

The *Copeland* decision is not helpful to Defendant. First, Defendant conflates the first and second prongs of 8 U.S.C. § 1326(d). In *Copeland*, the Second Circuit examined whether the defendant "exhausted" his administrative remedies for the purposes of § 1326(d)(1)—which the Government does not argue in the pending case. (Doc. 29 at 5.) Even if it were relevant, however, the Second Circuit's holding is actually counterproductive for Defendant. The Second Circuit stated that, with one exception that

is inapplicable here, "there is no futility exception…[s]tatutory exhaustion requirements such as Section 1326(d)(1) are mandatory, and courts are not free to dispense with them." *Id.* at 66–67 (internal citation omitted). Moreover, the opinion's discussion of the opportunity for judicial review prong of 8 U.S.C. § 1326(d) does not help Defendant, either. The court noted that the *Copeland* defendant could not appeal his deportation directly to a federal court for reasons not present in the pending case. *Id.* at 67–68; *see also Lara-Unzueta*, 287 F. Supp. 2d at 892 ("[Defendant] could have sought a direct appeal to the Seventh Circuit from the decision of the BIA.") (cited in Doc. 29-1 at 8). And with respect to habeas review pursuant to 28 U.S.C. § 2241, the *Copeland* court held that, "where habeas review is technically available, judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." *Copeland*, 376 F.3d at 68. Habeas review was not realistically possible in *Copeland* because the BIA did not rule on the defendant's appeal before he was deported, therefore prohibiting any meaningful opportunity to seek habeas review. *Id.* at 69. The same was not true in the pending case, however, in which Defendant had nearly three months between the BIA's ruling and his removal during which to file a habeas petition. (Doc. 29 at 3.) *Copeland* is not persuasive regarding Defendant's futility argument.

The second case that Defendant's counsel raised at oral argument, *Zara v. Ashcroft*, 383 F.3d 927 (9th Cir. 2004), is not on point. That case held that the requirement that an alien raise particular issues on appeal to the BIA in order to exhaust remedies also applies in the case of "streamlined" decisions, in which a single member of the BIA affirms an IJ's decision without opinion. *Id.* at 931. The *Zara* opinion could not reasonably be construed as waiving the judicial review requirement of 8 U.S.C. § 1326(d)(2) in any context, including for perceived futility of appeal.

In the present case, Defendant unpersuasively argues that he was "effectively" denied the opportunity for meaningful judicial review because further appeal would have been futile. (Doc. 23 at 5.) Crucially, he has not argued that the IJ or BIA failed to inform him of his right to appeal, nor that they prevented him from doing so. Rather, "[h]e freely

admits that he was able to (and did) appeal the IJ's deportation order to the BIA, and he identifies no impediment to his ability to appeal the BIA's decision to a federal court." *United States v. Gonzalez-Villalobos*, 724 F.3d at 1133 (*citing United States v. Adame-Orozco*, 607 F.3d 647, 652 (10th Cir. 2010)). For this independent reason, Defendant's collateral attack on his underlying 1998 removal order fails.

### 3. Fundamentally unfair

Because Defendant failed to establish that his 1998 proceedings improperly deprived him of the opportunity for judicial review, this Court need not decide whether the underlying removal order was "fundamentally unfair." *See* 8 U.S.C. § 1326(d)(3). Nonetheless, the Court next turns to this requirement.

An underlying removal order is "fundamentally unfair" if: "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Zarate–Martinez,* 133 F.3d 1194, 1197 (9th Cir. 1998), *cert. denied,* 525 U.S. 849, 119 S.Ct. 123 (1998).

The Court finds that this case is factually distinct from *Ubaldo-Figueroa* and others that have found a due process violation where that the defendant was never *made aware* of the possibility of relief from removal. *See, e.g., Ubaldo-Figueroa*, 364 F.3d at 1050 ("The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and [f]ailure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding.") (internal quotations omitted); *see also United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001) ("Therefore, when the record before the Immigration Judge 'raises a reasonable possibility' of relief from deportation under this provision, it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing.") (internal citation omitted); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (finding a due process violation where "the IJ should have known" that the defendant was eligible for relief from removal, but "never mentioned the § 212(h) waiver or any other possible mechanism to obtain relief from deportation.") As previously noted, Defendant

was clearly aware of the possibility of § 212(c) relief. (Doc. 23 at 3.)

The Court recognizes that Ninth Circuit authority also suggests that the improper *denial* of a request for § 212(c) relief constitutes a violation of due process. *See United States v. Leon-Paz*, 340 F.3d 1003, 1007 (9th Cir. 2003) (A removable alien, "like St. Cyr, was entitled to the continued protection of § 212(c), and the IJ erred when he told Leon that no relief was available. There was, therefore, a due process violation, and the district court erred when it held to the contrary."). Even accepting without specifically ruling that the IJ may have violated Defendant's due process rights, Defendant has not made a showing of prejudice. *Zarate–Martinez,* 133 F.3d at 1197.

To establish prejudice, a petitioner "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Arrieta*, 224 F.3d at 1079 (internal citation omitted). This is notably a more generous standard than that which the Seventh Circuit applied when it held that Defendant's underlying removal order was not fundamentally unfair: "[Defendant] cannot show prejudice by speculating that there is existed a possibility—no matter how small—that he might have been granted relief. To show prejudice, he was required to establish that the IJ's awareness of his discretion under 212(c) 'would have yielded him relief from deportation.' That is a showing that even [Defendant] acknowledges he did not, and could not, make." *USA v. Lara-Unzueta*, No. 04-1954, at 6 (7th Cir. May 24, 2005) (cited in Doc. 29-2 at 7) (internal citation omitted).

Even applying this Circuit's standard, however, Defendant has not shown that he would have had a "plausible" ground for discretionary § 212(c) relief. In awarding § 212(c) relief, "[t]he IJ must balance the social and humane considerations presented on the alien's behalf against the adverse factors including the alien's undesirability as a permanent resident." *Kahn v. I.N.S.*, 36 F.3d 1412, 1413 (9th Cir. 1994). Positive factors include "the existence of family ties within the United States[,…] residence of long duration in this country, hardship to the alien and family if deported, history of employment, property or business ties, community service, and, when there is a criminal record, genuine

rehabilitation." *Id*. at 1413, n.1. Negative factors "include the nature of the ground for deportation, the presence of other violations of the immigration laws, the nature, recency, and seriousness of any criminal record, and the presence of any other evidence of the applicant's bad character or undesirability as a legal permanent resident of the United States." *Id*. Defendant has not presented the Court with a basis for assessing whether he had a "plausible" ground for relief in light of these factors. (Doc. 23 at 5.) Were it necessary, the Court would require additional information from the parties to assess whether Defendant suffered prejudice. Because the Court has concluded that Defendant was not deprived of the opportunity for meaningful judicial review under 8 U.S.C. § 1326(d)(2), however, this inquiry is not necessary. Even upon a showing of fundamental unfairness, Defendant would not be able to meet the three necessary statutory requirements to successfully collaterally attack his underlying removal order.

**B.     Issue preclusion**

Independently, the Court agrees with the Government that Defendant's motion is barred by issue preclusion.[3] (Doc. 29 at 5.) The preclusive effect of a federal court judgment is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Issue preclusion, also known as collateral estoppel, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id*. (*citing New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)) (internal quotations omitted). The doctrine protects parties from "the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (*citing Montana v. United States*, 440 U.S.

---

[3] The Government also suggests that the motion is barred by claim preclusion (or res judicata). (Doc. 29 at 5.) Claim preclusion requires "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (internal citation omitted). "The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'" *Id*. Because the denial of Defendant's prior motions to dismiss was not a final judgment on the merits, claim preclusion does not properly preclude review of Defendant's motion.

147, 153–154 (1979)) (alteration omitted).

At least three federal courts have rejected Defendant's motion to dismiss his then-pending indictment on grounds that his underlying 1998 removal order was legally insufficient. *See Lara-Unzueta*, 287 F. Supp. 2d at 891 (cited in Doc. 29-1 at 7); *Lara-Unzueta*, No. 04-1954 at 4 (7th Cir. May 24, 2005) (cited in Doc. 29-2 at 5); *Lara-Unzueta*, 2012 WL 2359350, at *2 (cited in Doc. 29-4 at 6–7). The last to do so, the District Court for the Northern District of Illinois, also concluded in 2012 that Defendant's motion to dismiss was barred by collateral estoppel:

> The record reflects that in the prior criminal case in the United States district court in 2003, when [Defendant] was arrested and convicted for illegal reentry, [Defendant] also filed a similar motion to dismiss the indictment as he has done in this case. In that case, which occurred after the ruling in *St. Cyr*, [Defendant] raised virtually the same arguments. The district court denied [Defendant's] motion to dismiss, finding that the collateral attack on the deportation order was barred under 8 U.S.C. 1326(d)….The Government has shown that [Defendant] is collaterally estopped from presenting the same issue before this court that was already resolved in his prior criminal action.

*Lara-Unzueta*, 2012 WL 2359350, at *3 (cited in Doc. 29-4 at 7). This Court agrees. Even if the Court did not independently conclude that Defendant's collateral attack on his 1998 removal failed, the doctrine of issue preclusion prevents it from overriding the three federal courts to previously decide as much. *Taylor*, 553 U.S. at 892.

The fact that only Seventh Circuit courts have previously ruled on Defendant's underlying removal order does not, as Defendant's counsel suggested at oral argument, prevent the application of issue preclusion. Numerous courts have held as much. For example, in *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1238–39 (3d Cir. 1995), the Third Circuit rejected an argument that issue preclusion was inapplicable because the relevant issue was previously litigated in the Ninth Circuit. "Having already litigated and lost this issue within the Ninth Circuit in *Atlantic Mutual*,

Burlington now attempts to institute another action raising the same issue within another federal circuit in the hopes that this court would reach a conclusion different from that previously reached. . . .Burlington cannot now relitigate this issue that it already contested and lost in *Atlantic Mutual*. Issue preclusion applies." *Id.*; *see also Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 258 (D.C. Cir. 1992) ("[T]he fact that the substantive law may be different in the two jurisdictions does not affect the application of issue preclusion"); *National Post Office Mail Handlers v. American Postal Workers Union*, 907 F.2d 190, 194 (D.C. Cir. 1990) ("The doctrine of issue preclusion counsels us against reaching the merits in this case, however, regardless of whether we would reject or accept our sister circuit's position.").

It is irrelevant for issue preclusion purposes that this is the first case in which a Ninth Circuit court would assess Defendant's underlying removal order. Independent from this Court's substantive analysis, this matter is barred by issue preclusion.

## IV. CONCLUSION

Defendant's collateral attack on his 1998 deportation order does not satisfy at least the second prong of the three-part test set out in 8 U.S.C. §1326(d) and is therefore rejected. Separately, given that three federal courts (regardless of the fact that they were all in the Seventh Circuit) have also ruled that Defendant cannot successfully collaterally attack his 1998 removal order, issue preclusion bars this Court from allowing the same.

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 23) is **denied**. Excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D) is found to run from August 1, 2019.

Dated this 1st day of November, 2019.

Michael T. Liburdi
United States District Judge